[No. 15216. Department One. July 24, 1919.]

R. L. SABIN, *Respondent*, v. C. W. SMITH, *Appellant*.[1]

BANKRUPTCY (7, 12)—DISCHARGE—EFFECT—FRAUDULENT TRANSFER. Where an insolvent debtor, with property subject to two mortgages, made fictitious deeds to relatives, procured a collusive foreclosure of the first mortgage under an agreement to pay the debt in installments and redeem at any time, and then went through bankruptcy, obtaining a discharge of personal liabilities to evade the second mortgage indebtedness, subsequently redeeming the title, he will be held in equity to have retained the property for the protection of the second mortgage and not for the purpose of defeating his rights; since there never was a bona fide sale or foreclosure.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered October 8, 1917, upon findings in favor of the plaintiff, denying an injunction to restrain the sale of real property on execution, tried to the court. Affirmed.

*M. M. Moulton* and *Gerard Ryzek*, for appellant.

*M. L. Driscoll*, for respondent.

[1]Reported in 182 Pac. 589.

MACKINTOSH, J.—In Kahlotus, the appellant and his brother, A. A. Smith, were engaged in the general mercantile business, and in the year 1909, A. A. Smith retired and the appellant continued in the business. On May 2, 1911, the appellant mortgaged the store property for $3,000, and on May 20, 1912, as security for various debts long past due, made a second mortgage to the respondent, who, on December 25, 1912, began foreclosure of this second mortgage, the final decree in which action was filed on July 18, 1913. On January 15, 1913, the appellant deeded the property to his brother, A. A. Smith, the consideration for this conveyance "was the satisfaction of debts owing A. A. Smith, for partnership notes collected by the appellant." At the same time, the appellant transferred his stock of merchandise to A. A. Smith, who took possession of the real estate and merchandise, which latter was subsequently taken by the creditors, and A. A. Smith removed from Kahlotus.

The deed to A. A. Smith provided that it was subject to both the first and second mortgages, and he assumed them and agreed to pay them. On September 24, 1913, the first mortgagees began an action to foreclose, making the respondent a party. A decree was entered, finding that the respondent's rights were inferior as being those of a second mortgagee. The property was sold and a certificate of sale was issued to the Connecticut Investment Company on April 22, 1914, this company being the agent of the first mortgagees. After the transfer by the appellant of his property to A. A. Smith, the appellant became insolvent and went to Canada. Some months later he returned and, with his mother-in-law, organized the Kahlotus Mercantile Company, of which he owned one share and she owned the remainder. This company then started up the business in the same location that the appellant and his

brother had formerly used.  On March 10, 1914, this company entered into a contract with the Connecticut Investment Company whereby the latter company agreed to sell the property in controversy to the Kahlotus Mercantile Company.  This agreement, made before foreclosure, was that redemption could be had by paying the mortgage indebtedness at any time, either before or after the statutory time of redemption, at the convenience of the appellant; the agreement being that the appellant was to pay off the debt at the rate of $80 per month.  On May 28, 1914, the appellant was adjudged bankrupt, receiving his discharge in October, 1914.  In July, 1914, the building upon the property burned, and the insurance was paid over to the Connecticut Investment Company and credited on the contract with the Kahlotus Mercantile Company.  Later, in 1914, the Kahlotus Mercantile Company ceased business, its assets were divided, and in December, 1914, an assignment of the certificate of sale was made by the Connecticut Investment Company to the appellant, and the sheriff's deed to the property was made to the appellant in September, 1916.  By the receipt of the insurance money by the first mortgagees or their agent, the entire first mortgage, together with costs, attorney's fees, and all charges, had been paid, and a surplus remained in the hands of the first mortgagees which was the property of appellant.  In 1917, the respondent attempted to sell the real estate under execution on his judgment of foreclosure, and the appellant sought a temporary injunction to restrain that sale.  Being unsuccessful in the lower court, he has renewed his application here.

The object sought by the appellant is to have annulled the mortgage which he placed upon his property and set aside the lien thereof, and to prevent the enforcement of his liability as mortgagor, and to free his

land from all liability under the covenants of his mortgage. After the respondent had begun the foreclosure action, the appellant began his efforts to accomplish the result which he seeks by this injunction. With the intent to relieve himself from his debt, he conveyed his property by fictitious deeds to his relatives, to be held by them for him, and procured the collusive foreclosure of his first mortgage upon the property here involved, on an agreement and understanding with the mortgagees, and made before the foreclosure action was begun, that the property could be redeemed by the appellant paying the mortgage indebtedness at any time, either before or after the statutory period of redemption. With the title to the property thus apparently disconnected from him, he then proceeded to have himself adjudicated a bankrupt, and wiped out his personal liability. With his record thus clear, he then secured his property back from his relatives and perfected his arrangements for a redemption from the first mortgagees. In September, 1913, the same month in which the foreclosure proceedings upon the first mortgage began, the appellant commenced to pay to the first mortgagees payments in part redemption of the property, under the arrangement that we have already noticed. While the foreclosure was in process, the appellant made payments, both before and after the execution sale, which payments, it is admitted, were intended to apply in redemption of the mortgage, and were applied by the mortgagees in partial satisfaction of the mortgage debt. While this mortgage was being foreclosed, the appellant gave his view of the arrangements with the mortgagees in these words:

"The Connecticut Investment Company hold first mortgage on store and are foreclosing to clear title, as there was a flaw in the title. I pay them $80 a month and they agree to release store as soon as I can get to

it. They give me five years to pay same. They also hold $900 first mortgage on 160 acres of land, and will also sell me that the same way. They told me to go ahead and farm it and then have the party who farmed same to file a lien on land for labor. Before the Portland people took judgment, I deeded the store A. A. and the land to Sidney Tuplin, who is in B. C. As I understand it, the judgment will not be against the land in that case, but against me.''

The transfer to A. A. Smith was fictitious, and the appellant has at all times been the real owner of the property and has had possession thereof. The agreement between him and the first mortgagees was that the foreclosure was to have no effect as depriving him of his title. The foreclosure was merely used as a club to induce appellant to make more frequent and certain payments. During the foreclosure and after the execution sale, the position of the appellant and the mortgagees did not change, the latter simply held the land as security, being satisfied to accept payments from time to time in liquidation instead of pursuing the statutory method of requiring redemption.

Somewhere and somehow the appellant has conceived the idea that jugglery is a substitute for justice, and prestidigitation for payment, and in this court, with a seeming show of solemnity, argues that he can read his title clear. The appellant is correct in contending that the adjudication in bankruptcy cannot be collaterally attacked in this proceeding, but that adjudication merely discharged the appellant's personal liability and did not affect the mortgage lien. The researches of appellant's counsel have discovered two cases, one from Pennsylvania, *Rauch v. Dech*, 116 Pa. St. 157, 9 Atl. 180, 2 Am St. 598; and ''an old Irish case,'' *In re Howard's Estate,* 29 L. R., Ireland, 266, which support his argument that the mortgagor of lands, who has sold his equity of redemption, and who

has been discharged in bankruptcy, if he then purchases a first mortgage on the lands, would be regarded as a stranger to the estate, and the equities of subsequent mortgagees will not be revived. We may concede that these two cases hold to this effect and that the rule is proper, whether held by those cases or not. The difficulty here is that they do not represent the situation with which we are dealing. The recital which has been made of the facts shows that the appellant, who says in his brief, "this is an equity action in which appellant seeks for equitable relief," cannot be held by us to be in the same position as one who, in good faith, has sold his equity of redemption in property, has then been discharged by proceedings in bankruptcy from personal liabilities, and then purchases a mortgage on the same lands. There never was, as a matter of fact, a *bona fide* sale or foreclosure, and the appellant, having retained the property, will be held to have done so for the protection of the respondent, his mortgagee, and not for the purpose of defeating his rights.

The trial court was correct in denying the injunction, and its action is affirmed.

HOLCOMB, C. J., TOLMAN, MITCHELL, and MAIN, JJ., concur.